

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0613-12

**MICHAEL EDWARD DANSBY, SR, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## FROM THE FIFTH COURT OF APPEALS
## KAUFMAN COUNTY

KEASLER, J., filed a dissenting opinion, in which KELLER, P.J., and HERVEY, J., joined.

## O P I N I O N

The linchpin of the Court's opinion is its belief that Linda Young, Michael Dansby's therapist, discharged Dansby solely because he refused to submit to a sexual-history polygraph examination required for probationers in her sex-offender treatment program. It is apparent that this belief drives the Court's analysis and the case's final outcome. And to stretch this belief into a rationale why the court of appeals erred in failing to review Danby's constitutional claim, the Court holds that the lower court could not rely on the legal principle

that a single violation proved by a preponderance of the evidence is sufficient to proceed to judgment, "if one ground for revocation that it found to be supported by the evidence is equally infected with constitutional infirmity as the ground for revocation [the lower court did not reach]."[1] Using its newly minted "constitutional infection theory," the Court recasts the issue before it as a question of whether Dansby's refusal was the true reason for his discharge; a question the Court is too willing to answer.

Two central issues prevent me from joining the Court's opinion: First, the Court's rationale falsely assumes, without the necessary analysis or authority, that the therapist's subjective intent in discharging Dansby is relevant and is the appropriate analysis of whether the court of appeals should have reviewed Dansby's constitutional-violation claim. Second, the Court takes it upon itself to make a factual finding that it is ill-suited to make and reaches a conclusion that is contrary to the record.

The Court crafts an unnecessary rule that requires lower courts, in evaluating whether a trial court has abused its discretion in revoking community supervision, to plumb the depths of a therapist's subjective intent in choosing to discharge a probationer from treatment. The Court concludes that, the other factors contributing to Young's decision to discharge, including Dansby's reluctance to participate in group sessions divorced from fear of self-incrimination, do not necessarily establish that his discharge was for a reason independent

---

[1] *Ante*, op. at 13–14.

from his Fifth Amendment assertion.[2]

The Court misses the mark because it conflates the issues of whether Young inappropriately discharged Dansby with whether the trial court abused its discretion.[3] In my view, the court of appeals correctly analyzed the true issue—whether the trial court abused its discretion. On direct appeal, Dansby framed the relevant issue as whether the trial court abused its discretion in finding that Dansby violated conditions thirty (requiring that he submit to polygraph examinations) and thirty-six (requiring successful completion of sex-offender treatment). The court of appeals resolved the case by "conclud[ing] the trial court could have held a reasonable belief that [Dansby] violated condition thirty-six for reasons other than invoking his Fifth Amendment privilege" and therefore did not need to address his issue relating to condition thirty.[4]

While Young's decision to discharge Dansby triggered the motion to adjudicate, it is the trial judge alone who decides whether Dansby violated the terms of community supervision alleged in the motion to adjudicate.[5] Young's discharging Dansby from treatment does not mean that the trial judge had to revoke Dansby's community supervision.

---

[2] *Ante*, op. at 15.

[3] *See generally Leonard v. State*, 385 S.W.3d 570, 584–85 (Tex. Crim. App. 2012) (Keasler, J., dissenting).

[4] *Dansby v. State*, No. 05-10-00866-CR, 2012 WL 1150530, *5 (Tex. App.—Dallas April 9, 2012) (not designated for publication).

[5] TEX. CODE CRIM. PROC. art. 42.12, § 10(a).

The allegation was simply that Dansby did not successfully complete sex-offender treatment. In the abstract, there could be an infinite number of potential reasons why a probationer was not complying with treatment, each one sufficient to support a therapist's decision to discharge a probationer and a judge's decision to revoke or adjudicate. At the motion-to-adjudicate hearing, Dansby was given an opportunity to justify the alleged reason for discharge and in fact argued the same issue he does here, that he was discharged solely as a result of his Fifth Amendment invocation. Young's testimony refuted this assertion. The trial judge is "the sole trier of facts, of the credibility of the witnesses, and of the weight to be given to particular testimony at the hearing" and can accord varying weight to a witness's testimony or completely disregard it.[6] We have long held that an abuse-of-discretion standard applies when reviewing a trial judge's revocation of probation.[7] A trial court abuses its discretion by revoking probation when the State has failed to prove a violation by a preponderance of the evidence.[8]

As the Court insists, the State now has the burden to "establish" in the record that, in response to a hypothetical question that calls for speculation, the therapist would have discharged a probationer solely on other grounds if the probationer merely claims his

---

[6] *See Naquin v. State*, 607 S.W.2d 583, 586 (Tex. Crim. App. 1980).

[7] *Hacker v. State*, 389 S.W.3d 860, 865 (Tex. Crim. App. 2013); *Rickels v. State*, 202 S.W.3d 759, 763 (Tex. Crim. App. 2006); *Cardona v. State*, 665 S.W.2d 492, 493 (Tex. Crim. App. 1984); *Caddell v. State*, 605 S.W.2d 275, 277 (Tex. Crim. App. 1980).

[8] *Cardona*, 665 S.W.2d at 493–94.

discharge was the result of invoking the Fifth Amendment privilege. The more logical rule is that if the discharge is proven by a preponderance of the evidence and the record supports a finding that other legitimate grounds for discharge existed, any one of which would alone objectively justify discharging the probationer from treatment, the trial court's revocation and adjudication should be upheld. The court of appeals was correct in so holding and a prudent appellate court will only address those claims that are dispositive of the issues before it. Discussed in more detail below, even putting aside Dansby's refusal, there were several alternative reasons for discharging Dansby independent of his Fifth Amendment invocation and non-compliance motivated by fear of self-incrimination.

A majority of the Court definitively concludes that Dansby's refusal to submit to a sexual-history polygraph examination out of fear that he might incriminate himself was the deciding factor in Young's decision to discharge Dansby. How can we, sitting as a discretionary review court, review a cold record in this context—devoid of mannerism, body language, inflection, and all other nuance observable only by a trial judge—and confidently conclude that Young's decision to discharge Dansby was so transparently motivated by his failure to submit to a sexual-history polygraph examination? We have clearly recognized the superiority of a trial judge's position in determining issues of fact and credibility and recognized our own limitations in this respect.[9] These "'Johnny[s]-on-the-Spot'" [are]

---

[9] *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012).

personally able to see and hear the witnesses testify."[10]  Instead, we are left with testimony and evidence presented only in its written form, and yet from this, the Court derives Young's subjective intent.  To pretend that we are capable of rendering such a conclusion in this context is foolhardy.  Despite our limitations in making these determinations in this type of case, I can only suppose this Court wishes to usurp the trial judge's once-exclusive role as arbiter of witness credibility.

Moreover, the majority reaches this factual finding despite testimony to the contrary and  makes an inherent finding that Young is not credible.  Young was asked a total of three separate times, by both the State and Dansby, whether Danby's refusal to take the sexual-history polygraph examination was the only reason he was discharged from the program.  Each time, she stated that it was not:

> Q:    Was the not taking the polygraph was that the only reason that he got thrown out of sex offender treatment?
>
> A:    No, it's not at all.  He couldn't participate because he would of had to disclose information, and he was unwilling to do that.  So, he was guarded and his participation was not on target in terms of his own issues, his attitude stunk there at the end, and he just wasn't getting anywhere.
>
> . . . .
>
> Q:    Okay.  And based on [Dansby's refusal to answer any questions concerning prior sexual conduct], he was excused from your counseling sessions; is that correct?

---

[10]  *Id.* at 669.

A:      That's not correct.

. . . .

Q:      So, was the sex offender polygraph was that the only reason he got thrown out of treatment; he was just doing great otherwise?

A:      No, not at all.

In addition to her concerns and opinions about the course of Dansby's treatment and ultimate progress, Young testified about Dansby's other behavior and failings that could constitute other grounds for discharge.  Among them, Dansby (1) had minimal or no improvement during his year in treatment, (2) "never fully developed underlying beliefs—didn't let himself be vulnerable enough to give us that kind of information," (3) had an inability to admit or self-report about sexual impulses, the use of pornography, or having fantasies, (4) was being manipulative through lying and conning, (5) did not understand that he was a risk based on his deviant sexual desire and personality disorder, (6) failed to participate in group sessions by "refus[ing] to talk" when asked questions, and, (7) as a result of his lack of participation in group sessions, was disruptive.  Each one of these examples of Dansby's non-compliance is sufficient to support the trial judge's finding of true that Dansby unsuccessfully completed  sex-offender treatment.

 I agree with the Court that some evidence may suggest Dansby's refusal to take a sexual-history polygraph examination could have been one among many factors considered in deciding to discharge Dansby from treatment.  However, I disagree with the Court's conclusion that, even if we should wade into the fact-finding waters, the evidence rises to the

level to forcefully establish that Young discharged Dansby for this reason alone. Even evaluating this evidence favorably to the Court's opinion, it depicts an ambiguous record at best when compared to the other evidence of Dansby's non-compliance.

Lastly, although the Court expressly abstains from addressing whether Dansby's claim of the Fifth Amendment privilege was legitimate, the Court inherently presumes that it is. To be given any force, the Court's new rule must be understood to presume that Dansby's Fifth Amendment assertion is valid. This is so because the Court articulates the new rule and the State's burden by incorporating the phrases "even without refusing to answer what he took to be incriminating" and "wholly independent of his claim of Fifth Amendment privilege."[11] Surely, the Court cannot be understood to put the State to this heightened burden upon a probationer's mere claim of a constitutional violation whether substantiated or not. Here, if Dansby's reliance on the Fifth Amendment privilege is misplaced, there would be no constitutional violation for revoking him solely for refusing to answer questions about his sexual history, and therefore no other grounds for revocation to be "infected."

For these reasons, I dissent.


DATE FILED: May 8, 2013

PUBLISH

---

[11] *Compare ante*, op. at 16 *with* op. at 18.