ACCEPTED
03-14-00816-CR
5497344
THIRD COURT OF APPEALS
AUSTIN, TEXAS
6/1/2015 4:30:40 PM
JEFFREY D. KYLE
CLERK

## No. 03-14-00816-CR

In the Third Court of Appeals
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS

6/1/2015 4:30:40 PM

JEFFREY D. KYLE
Clerk

# ARIANA OLIVEIRA,

*Appellant,*

## v.

# THE STATE OF TEXAS,

*Appellee.*

On appeal from the County Court-at-Law Number Eight,
Travis County, Texas
Trial Cause No. C-1-CR-14-209113

# STATE'S BRIEF

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

GISELLE HORTON
ASSISTANT TRAVIS COUNTY ATTORNEY
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512) 854-9415
TCAppellate@traviscountytx.gov

*June 1, 2015*          ATTORNEYS FOR THE STATE OF TEXAS

**ORAL ARGUMENT IS NOT REQUESTED**

# TABLE OF CONTENTS

Index of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Issue Presented. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Background. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Summary of the State's Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Reply Point: The trial court did not err in refusing to suppress the
State's evidence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1. The trial court properly refused to automatically equate a
police car's activated overhead lights with a detention. . . . . . . 5

1.a. Oliveira ignores the trial court's supported findings and
misapplies the totality test. . . . . . . . . . . . . . . . . . . . . . . . 6

1.b. Oliveira's proposed bright-line rule regarding activated
overhead patrol-car lights ignores precedent. . . . . . . . . . 7

2. Even if the officer had detained Oliveira when the
overhead lights went on, he had reasonable suspicion of
criminal activity. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Prayer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# INDEX OF AUTHORITIES

**Statutes**                                                                    **Page**

TEX. PENAL CODE § 49.04
    (West Supp. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
TEX. TRANSP. CODE § 545.038
    (West 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

**Cases**

*Crain v. State*, 315 S.W.3d 43
    (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Florida v. Bostick*, 501 U.S. 429
    (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9
*Franks v. State*, 241 S.W.3d 135
    (Tex. App.—Austin 2007, pet. ref'd). . . . . . . . . . . . . . . . . . . . . . 7, 8
*Michigan v. Chesternut*, 486 U.S. 567
    (1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
*State v. Castleberry*, 332 S.W.3d 460
    (Tex. Crim. App. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*State v. Garcia-Cantu*, 253 S.W.3d 236
    (Tex. Crim. App. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 7
*State v. Mendoza,* 365 S.W.3d 666
    (Tex. Crim. App. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
*Wade v. State*, 422 S.W.3d 661
    (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

## STATEMENT OF THE CASE

Oliveira was charged by information with the Class B misdemeanor of driving while intoxicated,[1] alleged to have been committed on June 6, 2014. CR 17, 92, 96. After the trial court overruled her pre-trial suppression motion, Oliveira pleaded no contest to the charge. 3 RR 4; CR 91. On December 12, 2014, the trial court sentenced her to 180 days' confinement and a $2,000 fine, but suspended imposition of this sentence and placed Oliveira on community supervision for two years. CR 92, 94. Oliveira gave written notice of appeal on December 29, 2014. CR 104.

## ISSUE PRESENTED

Does a police officer's turning on overhead lights after pulling up behind a motorist who is at a standstill on the roadside shoulder late at night automatically constitute a detention, and therefore require reasonable suspicion of criminal activity?

---

[1] "A person commits an offense if the person is intoxicated while operating a motor vehicle in a public place[. . .] . [A]n offense under this section is a class B misdemeanor[. . .] ." TEX. PENAL CODE § 49.04(a)-(b) (West Supp. 2014).

1

# BACKGROUND

At about 1:45 in the morning, Austin police Officer Bryce Sakamoto saw a car unsafely stopped on a dirt embankment on Old San Antonio Road, just off of the southbound I-35 frontage road. 2 RR 7, 14; CR 85 (fact finding #1); 4 RR Defense Exhibit #1 @ 1:44:11. The car could have safely pulled over in a nearby, well lit parking lot. 2 RR 22, 24.

Intending to "investigate what the reason was for her to be not on the roadway and also to check welfare, make sure everything was okay," Sakamoto pulled up behind the car, stopped, and turned on his overhead lights. 2 RR 23. The trial court found that Sakamoto turned on the overhead lights for safety purposes, and to let backup officers know where he was. 2 RR 23, 26–27; CR 85, 86 (fact findings); 4 RR Defense Exhibit #1 @ 1:44:54. Although Sakamoto testified that he had "detained" the motorist when he pulled up behind the car. He also testified that, if the car had taken off, he would not have pursued it. CR 86 (fact finding); 2 RR 25.

Sakamoto got out and approached Oliveira, the driver and sole occupant. He asked her, "What's up?" CR 85; 2 RR 7, 24; 4 RR Defense

2

Exhibit #1 @ 1:44:54. The car's engine was running and the headlights were on. 2 RR 7. Oliveira's speech was so slurred that Sakamoto thought she was wearing braces. 2 RR 19, 25; 4 RR Defense Exhibit #1 @ 1:35:38. He immediately smelled alcohol on Oliveira, and saw glassy, bloodshot eyes. CR 85 (fact finding); 4 RR Defense Exhibit #1 @ 1:45:50. He suspected intoxication. 2 RR 20; CR 85 (fact finding). Another police officer then took over to investigate intoxication. 2 RR 20; 4 RR Defense Exhibit #1 @ 1:49:34. The details of this investigation were not developed at the suppression hearing because defense counsel litigated only the initial detention's lawfulness. 2 RR 26.[2]

After hearing evidence, the trial court concluded that the initial interaction between Officer Sakamoto and Oliveira was an encounter, and that Oliveira was not detained before police "observed substantial indications of intoxication." CR 86.

---

[2]   DEFENSE COUNSEL:  We're just dealing with whether there was reasonable suspicion to stop Ms. Oliveira, and I believe that ends when the officer approaches her vehicle.

## SUMMARY OF THE STATE'S ARGUMENT

Just as handcuffing does not always mean arrest, so overhead lights do not always mean detention. No bright-line rules exist for evaluating whether, or when, an encounter becomes a detention. The records supports the trial court's finding and conclusion that Oliveira was not detained until sometime after police had detected impairment symptoms. Oliveira misapplies the standard of review, which requires "almost total" deference to the trial court's supported findings. She also misapplies the totality test by focusing on a single factor: the overhead lights.

Even if the officer had detained Oliveira when he initially pulled in behind her and activated the overhead lights, the trial court could have concluded that the detention was lawful; Oliveira's unnecessarily and unsafely driving and stopping on the roadway shoulder constituted a traffic violation.

## ARGUMENT

*Reply Point*: **The trial court did not err in refusing to suppress the State's evidence.**

**1.  The trial court properly refused to automatically equate a police car's activated overhead lights with a detention.**

Oliveira's contention that activated police-car overhead lights automatically constitute a detention violates the all-things-considered character of the totality-of-the-circumstances test. Texas courts have categorically rejected the bright-line rule for this reason. Instead, each citizen-police encounter must be evaluated on its own terms; there are no *per se* rules. *State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008).

> The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation. Moreover, what constitutes a restraint on liberty prompting a person to conclude that he is not free to "leave" will vary, not only with the particular police conduct at issue, but also with the setting in which the conduct occurs.

*Id.* at 244 (quoting *Michigan v. Chesternut,* 486 U.S. 567, 573 (1988)).

### 1.a. Oliveira ignores the trial court's supported findings and misapplies the totality test.

Oliveira ignores the trial court's written findings, which the record supports. In reviewing the trial court's conclusion that the initial interaction constituted an encounter, the Court must consider not only the totality of the circumstances; it must consider that totality "in the light most favorable to the trial judge's implicit or explicit factual findings." *Id.* at 244; *see also Florida v. Bostick*, 501 U.S. 429, 437 (1991).

The trial court found and concluded that the police officer activated his patrol car's overhead lights for safety purposes as he pulled up behind the stopped car, intending to check welfare. CR 85–86. The trial court also found that, if the driver had taken off, the officer would not have pursued her. CR 86. The court concluded that the initial interaction between the officer and Oliveira was an encounter, and that Oliveira was not detained before police "observed substantial indications of intoxication." CR 86. Oliveira is therefore asking the Court to misapply the standard of review by similarly ignoring the court's findings, which would encroach upon the

6

trial court's exclusive province. But appellate courts defer to trial-court fact findings precisely because trial courts are in a better position to make them. *State v. Mendoza,* 365 S.W.3d 666, 669 (Tex. Crim. App. 2012).

### 1.b. Oliveira's proposed bright-line rule regarding activated overhead patrol-car lights ignores precedent.

The Court of Criminal Appeals and the Third Court have held that merely turning on overhead police car lights while behind a defendant's vehicle does not automatically constitute a detention. *Garcia-Cantu*, 253 S.W.3d at 244; *Franks v. State*, 241 S.W.3d 135, 142 (Tex. App.—Austin 2007, pet. ref'd); *Iselt v. State*, No. 03-12-00120-CR, 2014 Tex. App. LEXIS 4776 (Tex. App.— Austin May 2, 2014, pet. ref'd) (mem. op., not designated for publication). There are two reasons for this. First, such a bright-line rule would deter law enforcement officers from activating their headlights for safety purposes, which in turn would unnecessarily put them and others in harm's way. *Garcia-Cantu*, 253 S.W.3d at 244. Second, as mentioned earlier, such a rule eliminates from consideration all other relevant factors demanded by a totality-of-the-circumstances analysis. *Id*.

In *Franks*, for instance, the officer pulled in behind the defendant's vehicle and activated his overhead lights to illuminate a dark rest area. *Franks,* 241 S.W.3d at 139. The Third Court reasoned that, despite the officer's overhead lights, the initial interaction was an encounter, requiring no justification, because:

- The officer did not position his car in a way that "prevented appellant from leaving the rest area by simply driving forward[.]" *Id*.

- "[A]ppellant does not allege that the patrol car's siren was activated[.]" *Id*.

- Appellant did not contend that "she received any command over the loudspeaker[.]" *Id*.

- Appellant did not contend that the officer "told her to turn off her car's engine."

Like *Franks,* the facts of Oliveira's case show no signs of a detention when the officer activated his overhead lights. Officer Sakamoto did not position his car in a way that would prevent Oliveira from leaving. 4 RR State's Exhibit #1 @ 1:41:14. He did not activate his siren, give any commands over the loudspeaker, or command Oliveira to do anything. Rather, he simply turned on his overhead lights, walked up to Oliveira's

driver's side window, and inquired, "What's up?" 4 RR State's Exhibit #1 @ 1:45:02. This was evidence of concern, not any sort of command. Eliciting identity information, for instance, does not create a detention. *State v. Castleberry*, 332 S.W.3d 460, 466 (Tex. Crim. App. 2011). "What's up?" likewise does not convey "a message that compliance with the officer's request was required." *See Crain v. State*, 315 S.W.3d 43, 49 (Tex. Crim. App. 2010).

The intoxicated Oliveira may well have had a sinking feeling when she saw from the activated overhead lights that a law enforcement officer had pulled up behind her, but the Fourth Amendment does not protect her from discomfort. And, the reasonable, innocent person stopped on the shoulder in a somewhat remote and isolated area late at night probably would have been grateful to see that it was a police officer who had stopped behind her. The reasonable, innocent person also would have "felt free to decline the officer's request or otherwise terminate" the interaction— the touchstone of an encounter. *Bostick*, 501 U.S. at 434.

**2. Even if the officer had detained Oliveira when the overhead lights went on, he had reasonable suspicion of criminal activity.**

Even if defense counsel were correct in the assertion that overhead lights automatically constitute an investigative detention, Officer Sakamoto had reasonable suspicion that Oliveira had committed a traffic offense when he saw her car on the improved shoulder. TEX. TRANSP. CODE § 545.038 (West 2011) ("An operator may drive on an improved shoulder to the right of the main traveled portion of a roadway if that operation is necessary and may be done safely, but only . . . to stop, stand or park[.]"). Sakamoto testified that the car's position on the shoulder was unsafe, and that she could have parked in a nearby, well lit nearby commercial lot. 2 RR 22, 24. Thus, it was neither safe nor necessary for Oliveira to stop on the improved shoulder, and the trial court could have denied the requested suppression relief on that basis. *Wade v. State*, 422 S.W.3d 661, 667 (Tex. Crim. App. 2013) (reviewing court will uphold trial court's ruling if it is correct on any theory of law reasonably supported by the record).

## PRAYER

For these reasons, the Travis County Attorney, on behalf of the State of Texas, asks this Court to overrule the point of error and affirm the judgment of conviction for driving while intoxicated.

Respectfully submitted,

DAVID A. ESCAMILLA
TRAVIS COUNTY ATTORNEY

Giselle Horton
Assistant Travis County Attorney
State Bar Number 10018000
Post Office Box 1748
Austin, Texas 78767
Telephone: (512) 854-9415
TCAppellate@traviscountytx.gov

ATTORNEYS FOR THE STATE OF TEXAS

11

## CERTIFICATE OF COMPLIANCE

Relying on Corel WordPerfect's word-count function, I certify that this document complies with the word-count limitations of TEX. R. APP. P. 9.4. The document contains 2241 words.

_____

Giselle Horton

## CERTIFICATE OF SERVICE

I certify that I have sent a complete and legible copy of this State's Brief via electronic transmission to Ms. Oliveira's attorney of record, Mr. Joshua Saegert, at saegertlaw@yahoo.com, on or before June 8, 2015.

_____

Giselle Horton
Assistant Travis County Attorney