# NO. 12-19-00377-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *THE STATE OF TEXAS, APPELLANT* | § | *APPEAL FROM THE 258TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *GEORGIA DONNELL, APPELLEE* | § | *TRINITY COUNTY, TEXAS* |

## *PER CURIAM ORDER*

The State of Texas appeals from an order granting a motion to suppress filed by Georgia Donnell. On November 5, 2019, the trial court granted the motion and filed findings of fact and conclusions of law. On November 13, the State requested supplemental findings on grounds that the trial court omitted several facts, from the testimony of Sergeant Jeremy Alexander of the Trinity County Sheriff's Office, that led to the stop. The trial court did not file any supplemental findings. On February 5, 2020, the State filed a motion to abate with this Court, asking that we direct the trial court to rule on the State's motion for supplemental findings. The State notes that it filed a second motion for supplemental findings on February 5, in which it requested that the trial court find the omitted facts from Alexander's testimony to be credible or not credible. We abate and remand.

Upon the request of the losing party on a motion to suppress, the trial court shall state its essential findings, i.e., those findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts. *State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). The losing party may require the trial judge to make explicit historical findings of fact and credibility determinations. *State v. Mendoza*, 365 S.W.3d 666, 670 (Tex. Crim. App. 2012). Because an appellate court's review of the trial court's ruling is restricted by an inadequate record of the basis for that ruling, it is

necessary to require a trial court to express its findings of fact and conclusions of law when requested by the losing party. *Cullen*, 195 S.W.3d at 700. The prudent course is to remand the case to the trial judge to make findings of fact with greater specificity if the original findings are insufficient to resolve the legal question. *Mendoza*, 365 S.W.3d at 670.

The State charged Donnell with possession with intent to deliver methamphetamine in an amount less than one gram. The charge arose from a stop of Donnell's vehicle after a confidential informant (CI) told Alexander that she could purchase methamphetamine from Donnell. During the stop, Donnell confessed to having drugs in her pocket.

The trial court made numerous findings of fact, which we summarize as follows:

> On November 28, 2018, Trinity County Chief Deputy Tommy Park was sitting in his vehicle in an empty lot next to the Hawg Heaven subdivision at the Trinity County/Polk County line because Donnell was supposedly traveling from Onalaska, Polk County, Texas.
> Park saw Donnell driving a blue GMC truck from Polk County into Trinity County.
> Park did not see Donnell do anything illegal or commit any traffic violations.
> Park relayed the information to Alexander who was waiting in Trinity County to arrest Donnell.
> Alexander received information from an unidentified CI that she could purchase methamphetamine from Donnell.
> On November 28, the CI said she arranged the buy with Donnell, who would obtain the narcotics in Onalaska.
> Alexander had never worked with the CI, met the CI, or used the CI, and could not say the CI had been reliable in the past.
> Alexander admitted the CI had a drug criminal history and left the State of Texas.
> The CI told Alexander that Donnell was using the CI's phone to text a drug supplier.
> Alexander never saw the CI with Donnell on the date of the offense or at any other time.
> After Alexander arrested Donnell, the CI gave him copies of the texts from Donnell to the alleged supplier. He did not receive the texts to his phone and could not say who actually sent the texts.
> Alexander did not see a copy of the texts until after arresting Donnell.
> Alexander did not see Donnell at a location where she was allegedly obtaining drugs in Onalaska.
> Alexander positioned his vehicle in Trinity County at Cattle Line Bar on the county line and observed Donnell cross from Polk County into Trinity County.
> The texts have a phone number but no identifying numbers, who is texting whom, or a time stamp.
> Alexander did not stop Donnell for a traffic violation, see Donnell with drugs, or know who was "actually doing" the texts.
> Alexander stopped Donnell when she crossed into Trinity County; she had committed no traffic violation and was not seen with drugs in plain view.
> Donnell was not stopped in a high crime area where previous criminal activity was afoot.
> Alexander stopped Donnell and read her *Miranda* warnings.
> Donnell stated the truck belonged to her son-in-law.
> Alexander's dash cam was properly operating and recorded the stop, interview, and arrest.
> Alexander's "consent" to search resulted from the following exchange:
>> Alexander: You're going to cooperate with me or you're going to make me do this the hard way, all right? You got the dope. It's either in the truck or it's on your person. I'm either going to have a female come out here and search you or you can just hand it over and tell me the truth?
>> Donnell: I don't have any dope. I'm working right up the road[.]
>> Alexander: Georgia, listen to me, all right? Buddies over in Polk County -- Don -- we know all about this, okay? So here's the deal, listen -- look. I'm only going to give you one

> opportunity to tell me the truth. I've already got probable cause to search your truck. So listen to me: If you make me tear that truck apart and you make me work for it, I'm not going to work with you at all, all right? I'm trying to give you the opportunity to tell me the truth and just hand it over. It's a lot easier that way. I promise you.
>
> Donnell then admitted she had drugs in her pocket.
>
> A small amount of drugs was found on Donnell's person.

The trial court's findings did not specify which portions of Alexander's testimony, if any, it found to be credible or not credible. In its conclusions of law, the trial court stated, in pertinent part:

> The unnamed CI, (whom Alexander had never worked with, met, or seen with Donnell, he could not say had been reliable in the past, had a drug criminal history, and left Texas) did not provide reasonable suspicion to stop Donnell, especially considering it was not a high crime area, and Donnell had not committed any traffic violations or other crimes witnessed by Alexander.
>
> There was no probable cause to search Donnell or her vehicle.
>
> Donnell's confession was a product of an illegal stop.
>
> The confession was involuntary under the Fifth and Fourteenth Amendments to the United States Constitution, *Miranda v. Arizona*, 384 U.S. 436 (1966), Articles 38.21, 38.22 §§ 2(b), 6, 38.23, and 1.04 of the code of criminal procedure, and Article I, §§ 13 and 19 of the Texas Constitution.

The State argues that the lawful basis for the stop can be found in Alexander's testimony, portions of which the trial court omitted from its findings. Specifically, in its motion for supplemental findings, the State identified the following omitted facts:

> (1) The C.I. and Donnell were co-workers and familiar with each other.
>
> (2) During the transaction, the C.I. kept Alexander updated on Donnell's movements and actions.
>
> (3) The C.I. advised Alexander that Donnell operated a blue GMC truck and would be headed in their direction…Alexander observed Donnell in a blue GMC truck.
>
> (4) The first time Alexander observed Donnell in the blue GMC, the C.I. had advised him that Donnell was unsuccessful in purchasing methamphetamine.
>
> (5) The C.I. advised Alexander that Donnell made a deal to purchase methamphetamine from another source.
>
> (6) The C.I. sent Alexander a "screen shot," a picture of a text message, before he stopped Donnell, and confirmed purchase of methamphetamine from another source… Alexander did not have the actual text message when he stopped Donnell.
>
> (7) Alexander observed Donnell going to make the purchase of methamphetamine in the direction the C.I told him Donnell would be going to make the purchase.
>
> (8) Alexander stopped Donnell as she returned from the direction where she was supposedly purchasing methamphetamine approximately 25 minutes after seeing her traveling in that direction to purchase the methamphetamine.

In response to the State's motion, Donnell opposed numbers three, four, seven, and eight, agreed to numbers one, two, and five, and agreed to number six if amended to state, "C.I. sent Alexander a 'screenshot' which is essentially a picture of a text message after the stop was conducted.

Alexander did not have the screenshot or the actual text message at the time he pulled Donnell over, as indicated in his testimony and the contents of his report."

A trial court's findings and conclusions must be "adequate and complete, covering every potentially dispositive issue that might reasonably be said to have arisen in the course of the suppression proceedings." *State v. Elias*, 339 S.W.3d 667, 676 (Tex. Crim. App. 2011). An appellate court "should not be forced to make assumptions (or outright guesses) about a trial court's ruling on a motion to suppress evidence." *Cullen*, 195 S.W.3d at 698. Because the items the State identifies as being omitted from the trial court's fact findings, especially credibility determinations, are relevant to our determination of whether the trial court properly granted the motion to suppress, we conclude that abatement is proper. *See Mendoza*, 365 S.W.3d at 667, 673 (remanding to appellate court with instructions to abate to trial court for supplemental findings because written findings were ambiguous and there was no credibility determination; trial court was best positioned to evaluate officer's credibility and was in best position to clarify ambiguous findings and make explicit credibility determination).

Accordingly,

It is ORDERED that the Honorable Travis E. Kitchens, Jr. shall rule on the State's motion for supplemental findings of fact, and prepare and file the court's supplemental findings. Such findings must be filed with the district clerk on or before **March 19, 2020**.

It is FURTHER ORDERED that a supplemental clerk's record including the supplemental findings be certified to this Court on or before **March 26, 2020**.

**WITNESS** the Honorable James T. Worthen, Chief Justice of the Court of Appeals, 12th Court of Appeals District of Texas, at Tyler.

**GIVEN UNDER MY HAND AND SEAL OF SAID COURT**, at my office this 26th day of February 2020, A.D.

KATRINAMCCLENNY, CLERK
12th Court of Appeals

By:_Katrina McClenny_____