# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00029-CR

---

**Michael Wayne Williams, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE COUNTY COURT OF LAMPASAS COUNTY
### NO. 21282, THE HONORABLE RANDALL J. HOYER, JUDGE PRESIDING

---

## O R D E R  A N D  M E M O R A N D U M  O P I N I O N

**PER CURIAM**

Appellant Michael Wayne Williams, who was arrested for driving while intoxicated (DWI), second offense, *see* Tex. Penal Code § 49.04(a), appeals the trial court's order denying his motion to suppress. After ruling on the motion, the trial court—on Williams' request—entered findings of fact and conclusions of law:

> FACTS:
>
> On September 26, 2019, Lampasas Police Department 911 received a call reporting a possible DWI. The caller provided a description of the vehicle, license plate number and location of where the vehicle was going. This information was relayed to Officer Bowman by Lampasas PD Dispatch. Officer Bowman shortly thereafter located a vehicle similar in description in the general location provided to him by dispatch. Officer Bowman conducted an investigative detention of limited scope and duration and observed an odor of alcohol. With assistance from Officer Montgomery, the defendant was arrested and charged with operating a motor vehicle in a public place while intoxicated.

CONCLUSION:

While the vehicle make and model, as well as license plate number provided in the 911 call were not 100% accurate, the description of the vehicle and location were close enough for the officer to find the reported vehicle and driver. Based off the evidence presented and testimony provided at the hearing, I believed the arresting officer's actions met the minimal level of objective justification and reasonable suspicion for making the stop. I therefore ruled to deny the motion to suppress.

For the following reasons, we will abate the appeal and remand the case to the trial court so that it may make additional findings and conclusions necessary to the disposition of this appeal.

"Upon request of the losing party, a trial court must issue essential findings of fact and conclusions of law that justify its ruling." *State v. Copeland*, 501 S.W.3d 610, 613 (Tex. Crim. App. 2016) (quoting *State v. Cullen*, 195 S.W.3d 696, 698–99 (Tex. Crim. App. 2006)); *accord State v. Saenz*, 411 S.W.3d 488, 495 (Tex. Crim. App. 2013). "'Essential findings' means that 'the trial court must make findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts.'" *Copeland*, 501 S.W.3d at 613 (quoting *State v. Elias*, 339 S.W.3d 667, 674 (Tex. Crim. App. 2011)); *accord Saenz*, 411 S.W.3d at 495. "In issuing its essential findings, trial courts have an obligation to ensure that they are 'adequate and complete, covering every potentially dispositive issue that might reasonably be said to have arisen in the course of the suppression proceedings,'" *Copeland*, 501 S.W.3d at 613 (quoting *Elias*, 339 S.W.3d at 674), including "explicit credibility determination[s]" regarding the witnesses who testified at the suppression hearing, *State v. Mendoza*, 365 S.W.3d 666, 673 (Tex. Crim. App. 2012). "The essential-findings rule exists to ensure that appellate courts resolve issues presented on appeal 'based on the reality of what happened at the trial court level rather than on appellate

2

assumptions that may be entirely fictitious.'" *Copeland*, 501 S.W.3d at 613 (quoting *Elias*, 339 S.W.3d at 674); *see Mendoza*, 365 S.W.3d at 671 (explaining that requirement that trial court make specific findings of fact "ensure[s] that reviewing courts need not presume, assume, or guess at what historical facts a trial judge actually found when making a ruling in a motion to suppress hearing").

An appellate court may not "presume factual findings that may be dispositive in a case when a trial court's findings are an inadequate basis upon which to make a legal conclusion and when those findings have been properly requested by a losing party." *Saenz*, 411 S.W.3d at 495 (citing *Elias*, 339 S.W.3d at 674; *Mendoza*, 365 S.W.3d at 673; *Cullen*, 195 S.W.3d at 699). Instead, "an appellate court must abate for additional findings of fact when a party has requested findings of fact and the findings that are made by a trial court are so incomplete that an appellate court is unable to make a legal determination." *Id.* (citing *Elias*, 339 S.W.3d at 674; *Mendoza*, 365 S.W.3d at 673; *Cullen*, 195 S.W.3d at 699). "Rule 44.4 authorizes the court of appeals to remand the case to the trial court so that the court of appeals is not forced to infer facts from an unexplained ruling." *Cullen*, 195 S.W.3d at 698 (citing Tex. R. App. P. 44.4).

This case concerns the interaction between Williams and an officer in a gas station parking lot. The undisputed evidence introduced at the suppression hearing shows that Williams' neighbor made a 911 call alleging that Williams was possibly driving while intoxicated. A responding officer found Williams parked in his truck with its brake lights activated. The officer parked behind Williams and approached the truck; a DWI investigation subsequently ensued, and Williams was arrested and charged with DWI, second offense.

The parties' arguments on appeal raise issues involving the legality of the interaction and arrest, including whether the initial contact was consensual or amounted to an

3

investigative detention; whether a reasonable person in Williams' position would have felt free to leave; if the officer detained Williams, whether the officer had reasonable suspicion for the detention; whether at the time of Williams' arrest officers had probable cause to arrest him; whether Williams was subject to a custodial interrogation and, if so, whether the officer provided him with the required constitutional and statutory warnings; and whether during the initial interaction the officer was acting pursuant to his community-caretaking function.

The evidence admitted at the hearing included testimony from the officer who first interacted with Williams at the gas station, a second officer who assisted with the DWI investigation, and Williams himself; a recording of the 911 call made by Williams' neighbor; the Lampasas Police Department activity log and dispatch report; dash-camera video from both officers' patrol vehicles; and a DWI case report of the incident. Based on this evidence, Williams argued that his initial interaction with the first officer was non-consensual and was not a welfare check but an investigatory detention, for which the officer lacked reasonable suspicion. The State replied that it was willing to concede that the officer lacked reasonable suspicion but contended that the interaction had not amounted to a stop and was instead consensual.

In its findings and conclusions, the trial court provided a brief and limited narrative of the facts and concluded that the "arresting officer's actions met the minimal level of objective justification and reasonable suspicion for making the stop." The trial court did not, however, make factual findings concerning numerous significant issues raised by the evidence at the hearing—many of which were contested—including the precise content and language of the 911 call; the time of day and location of the interaction; how the vehicle description and license plate number provided by dispatch differed from those of the vehicle in which the officer found Williams; whether dispatch relayed information about the vehicle's driving; how many officers

4

and vehicles were present during the interaction; whether the overhead lights or siren of either officer's patrol vehicle were on; whether either officer drew his service weapon during the interaction; what volume and tone of voice the first responding officer used during the interaction; whether the officer issued any commands or orders to Williams; whether either officer saw Williams driving; the credibility of the first officer's testimony regarding why he positioned his patrol vehicle as he did; the location of each officer's vehicle with respect to Williams' vehicle; whether Williams' vehicle could have left the parking lot before the second officer arrived; whether Williams' vehicle could have left the parking lot after the second officer arrived; the extent to which Williams' attempting to leave before the second officer arrived would have risked a collision with the first officer's vehicle; the credibility of both officers' testimony concerning Williams' ability to drive away without hitting a police vehicle; the presence of any indicators other than the odor of alcohol that Williams had been drinking; whether the first officer saw Williams' activated brake lights; whether the activated brake lights indicated that that the vehicle was in operation; whether either officer saw keys in the ignition of Williams' vehicle; the presence of any indicators that Williams was operating the vehicle; the credibility of the first officer's testimony that his investigation was "a welfare concern . . . [u]ntil he establish[es] the fact that [Williams is] intoxicated"; the presence of any evidence indicating that Williams was in need of assistance or medical attention; the credibility of Williams' testimony that he was not drinking the morning of the incident, that he had never been drunk around his neighbor, and that his neighbor could not have seen him drinking that day; whether the 911 caller witnessed Williams driving; the credibility of Williams' testimony that he did not feel free to leave when the first officer approached his vehicle; the credibility of Williams' testimony that he could not have backed up; whether Williams told the first officer that he did

5

not wish to speak to him; whether Williams was subject to standardized field sobriety tests (SFSTs); if so, which tests were taken by Williams and the results of the tests; whether Williams consented to any SFSTs; whether Williams' arrest was warrantless; whether Williams provided a breath sample, consented to provide such a sample, and the results of any testing of the sample; and whether Williams provided a blood sample, consented to provide such a sample, and the results of any testing of the sample. In addition, the trial court did not explain which evidence it had considered in making its findings or, to the extent that it relied on testimony, which testimony or portions of testimony it found to be credible. *See Mendoza*, 365 S.W.3d at 672 (concluding that trial court's fact findings were inadequate because "these factual findings [did] not find many historical facts, nor [did] they find that [the officer's] beliefs and feelings were objectively reasonable ones" and "[t]hey also contain[ed] no credibility assessment of [the officer's] testimony").

Likewise, although the trial court found that the "arresting officer's actions met the minimal level of objective justification and reasonable suspicion for making the stop," the trial court failed to make other necessary legal conclusions regarding potentially dispositive issues, including whether the 911 caller was reliable; whether the initial interaction between Williams and the first responding officer was consensual, was an investigatory detention, or was an arrest; if it was a detention, when the detention began; whether a reasonable person in Williams' position would have felt free to leave during the interaction; whether the State's statement that it was willing to concede that the first officer lacked reasonable suspicion foreclosed the trial court from ruling on that basis; if Williams was detained, whether the detention was justified by the officer's community-caretaking function; whether Williams was subject to a custodial interrogation; if so, whether he received the required constitutional and

6

statutory warnings beforehand; whether, at the time of Williams' arrest, officers had probable cause to arrest him; and whether any breath or blood specimens provided by Williams were obtained lawfully.

Accordingly, we abate this appeal and remand the cause to the trial court to make additional findings of fact and conclusions of law consistent with this order. *See Elias*, 339 S.W.3d at 676–77; *see also* Tex. R. App. 44.4; *see, e.g., Mendoza*, 365 S.W.3d at 673 (remanding case to court of appeals with instructions to abate it to trial court for further entry of fact findings that clarify ambiguous factual findings, make explicit credibility determinations, and "dispel any confusion about precisely what historical facts the trial judge found and whether [the judge] found [the officer's] beliefs and conclusions objectively reasonable, based on the historical facts"); *State v. McMahan*, No. 03-19-00824-CR, 2020 WL 5392751, at *2 (Tex. App.—Austin Sept. 4, 2020, no pet.) (per curiam) (mem. op., not designated for publication) (concluding that trial court's fact findings were inadequate because they were "conclusory and ambiguous" and did not contain information essential for determination of whether officer had reasonable suspicion to believe that defendant violated Transportation Code section at issue). A supplemental clerk's record containing the additional findings of fact and conclusions of law shall be filed with this Court by October 24, 2022. This appeal will be reinstated after the supplemental clerk's record is filed.

It is so ordered September 29, 2022.

Before Chief Justice Byrne, Justices Baker, Smith

Abated and Remanded

Filed:   September 29, 2022

Do Not Publish