# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-16-00286-CR

**The State of Texas, Appellant**

**v.**

**Lindsey Egbert, Appellee**

### FROM THE COUNTY COURT AT LAW NO. 6 OF TRAVIS COUNTY
### NO. C-1-CR-15-204869, HONORABLE BRANDY MUELLER, JUDGE PRESIDING

## O R D E R   A N D   M E M O R A N D U M   O P I N I O N

**PER CURIAM**

The State appeals the trial court's order granting appellee Lindsey Egbert's motion to suppress evidence obtained in connection with her traffic stop, detention, and arrest for driving while intoxicated (DWI). The State contends that the trial court abused its discretion in suppressing the evidence because the pre-trial evidence contained specific, articulable facts to support the arresting officer's initial stop of appellee for reasonable suspicion of criminal activity or, alternatively, that we must abate the appeal and remand for supplemental fact findings. Because there are insufficient factual findings for us to conduct our review, we abate this appeal and remand this cause to the trial court for additional findings.

## BACKGROUND

At the hearing on appellee's motion to suppress, the State called Deputy Ralph Cisneroz to testify and played for the court a video from the deputy's dashboard camera. After the close of evidence, the State argued that appellee's motion should be denied because the evidence supported the deputy's stop of appellee based on his reasonable suspicion that she (1) committed two traffic violations, *see* Tex. Transp. Code §§ 545.062(a) ("An operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway."), .152 ("To turn left at an intersection or into an alley or private road or driveway, an operator shall yield the right-of-way to a vehicle that is approaching from the opposite direction and that is in the intersection or in such proximity to the intersection as to be an immediate hazard."), and (2) was driving while intoxicated.

After the hearing and pursuant to the State's request, the trial court made findings of fact and conclusions of law. Among the findings of fact were the following:

- Deputy Cisneroz testified to speculating before the stop or arrest, that in observing [Defendant]'s vehicle he thought that because the Defendant seemed to be driving too close to the vehicle ahead of hers, that the Defendant was following someone, in an effort to help her (the Defendant) on the road, because she (the Defendant) had had too much to drink. Deputy Cisneroz testified with regard to his speculation, that the driver may have asked another person to "either follow or lead me to where I need to go in case something happens."

- Deputy Cisneroz further testified that the Defendant was following the other car "extremely closely" and that it was "extremely dangerous."

2

- [Cisneroz] stated that he observed the Defendant cross the northbound lanes of Lamar into a gas station on the other side of the road, hesitating as she made the left turn. Officer Cisneroz testified that this caused a northbound vehicle to aggressively brake and move into another lane to avoid a collision.

- The video evidence seems to contrarily show, that while there was a car approaching from the north, it was not close enough in proximity to Defendant's vehicle to cause a traffic hazard.

- The dash cam video evidence at the hearing showed the Defendant's vehicle following the lead car at 27 miles per hour. The video further showed the roadway to be dry and well lit by streetlights with a speed limit of 35 mph. The video did show the Defendant's vehicle behind another vehicle, but it did not appear to the Court that the Officer was close enough to observe whether the distance was too close or that the driving was hazardous.

- Deputy Cisneroz's testimony was not corroborated by the video evidence.

Based on its findings of fact, the court made the following conclusions of law:

The Court did not find there to be sufficient probable cause of a violation of the Transportation Code or a reasonable basis, based on the totality of the circumstances, for the stop. The Court considered whether there was sufficient reasonable suspicion for the stop.

* * *

In this case, the Court concluded that the basis for the stop was vague and insufficient and further, not supported or corroborated by the evidence. In addition, the evidence conflicted with the State's assertion that defendant's driving was "extremely dangerous" or otherwise hazardous.

On appeal, the State contends that the trial court abused its discretion in suppressing the evidence because the court's findings and conclusions pertaining to whether appellee was maintaining a safe following distance are not entitled to any deference. Specifically, the State takes issue with the trial court's finding that the deputy was not close enough to observe whether

3

appellee's following distance was unsafe in light of the videotape, which "clearly shows that [the deputy] was close enough to observe." In an alternate issue, the State requests that we abate the appeal and remand to the trial court for supplemental factual findings on two "key components" of the deputy's testimony: (1) appellee's alleged failure to yield to oncoming traffic and (2) the deputy's reasonable suspicion that appellee was driving while intoxicated.

**DISCUSSION**

At a suppression hearing, a trial court examines the "totality of the circumstances" to determine whether the State has shown sufficient historical facts that, viewed from the standpoint of an objectively reasonable police officer, amount to reasonable suspicion that a particular person was engaged in criminal activity and that, therefore, an investigatory stop was justified. *See State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012); *Martinez v. State*, 348 S.W.3d 919, 924 (Tex. Crim. App. 2011). Reasonable suspicion exists if the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). The "totality of the circumstances" requires consideration of the "whole picture," not merely isolated components of it. *United States v. Sokolow*, 490 U.S. 1, 8–10 (1989); *Woods v. State*, 956 S.W.2d 33, 37–8 (Tex. Crim. App. 1997) ("We recognize that there may be instances when a person's conduct viewed in a vacuum, appears purely innocent, yet when viewed in light of the totality of the circumstances, those actions give rise to reasonable suspicion.").

When reviewing a trial court's ruling on a motion to suppress, we review its factual findings for abuse of discretion and its legal rulings about the existence of reasonable suspicion de novo. *Mendoza*, 365 S.W.3d at 669. The reviewing court gives "almost total deference" to the trial court's findings of historical facts that are supported by the record, especially those findings that are based on an evaluation of credibility and demeanor. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). With respect to mixed questions of law and fact (i.e., "application of law to fact questions"), if the resolution of them turns on an evaluation of credibility or demeanor, we apply the same "almost total deference," but for mixed questions that do not depend upon credibility and demeanor, we apply a de novo standard of review. *Id.* When the trial court makes a finding of fact that is derived from video evidence admitted at a suppression hearing, that finding is also generally entitled to "almost total deference" if supported by the record, due to the trial court's primary "fact-finding function." *See Carter v. State*, 309 S.W.3d 31, 40 & n.47 (Tex. Crim. App. 2010); *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *cf. Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (declining to give "almost total deference" to trial court's implicit findings about defendant's consent to search under "unique circumstances" of case where videotape presented "indisputable visual evidence contradicting essential portions" of fact findings).

If a trial court makes findings of fact but they are inadequate to provide the appellate court with a basis upon which to review the trial court's application of the law to the facts and to resolve the dispositive legal question, we must remand to the trial court for it to make more specific findings. *See Mendoza*, 365 S.W.3d at 670; *State v. Elias*, 339 S.W.3d 667, 676–77 (Tex. Crim. App. 2011); *see also State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006) (noting that

5

"essential findings" mean "findings of fact and conclusions of law adequate to provide an appellate court with a basis upon which to review the trial court's application of the law to the facts"). Our review of the trial court's factual findings here leads us to conclude that they are insufficient for a de novo review of the dispositive legal question of whether the deputy had reasonable suspicion to stop appellee.

First, most of the relevant "Factual Findings" made by the trial court merely recite what Deputy Cisneroz's testimony *was* rather than make any historical findings of fact based on that testimony, including any findings about credibility. *See Mendoza*, 365 S.W.3d at 672 (remanding for supplemental findings where trial court's factual findings merely recited testimony but did not find many historical facts, including credibility assessments and whether officer's beliefs and feelings were objectively reasonable). For instance, Finding 3 states, "Deputy Cisneroz *testified* that he observed the Defendant's vehicle 'aggressively' following a vehicle in front of it . . . [and] that it was traveling . . . *too close* to the vehicle in front of it; at one point *testifying* the vehicle ahead of the Defendant was less than half a car-length away" (first and third emphases added). In other findings, the trial court "found" that the deputy (1) "*testified* to speculating . . . [that] he *thought* that . . . the Defendant was following someone [] in an effort to help her (the Defendant) on the road, because she (the Defendant) had had too much to drink" (Finding 4, emphases added); (2) "*testified* that the Defendant was following the other car 'extremely closely' and that it was 'extremely dangerous'" (Finding 5, emphasis added); and (3) "*stated* that he *observed* the Defendant cross the northbound lanes of Lamar into a gas station on the other side of the road, hesitating as she made the left turn . . . [and] *testified* that this caused a northbound vehicle to aggressively brake and move into another lane to avoid a collision" (Finding 6, emphases added). "[A]ny reviewing court can read the

record and see [Deputy Cisneroz's] testimony, but did the trial court believe that testimony?" *Id.* at 671. We cannot tell from this record, because the trial court's "findings" do not fulfill its fact-finding role but merely summarize the testimony.

Secondly, in two of the remaining findings,[1] the trial court noted that (1) the video evidence "*seems to* contrarily [to Deputy Cisneroz's testimony] *show* . . . that the approaching [car] . . . was not close enough in proximity to Defendant's vehicle to cause a traffic hazard" (Finding 7, emphases added) and (2) "it *did not appear to the Court* [from the video evidence] that the Officer was close enough to observe whether the distance was too close or that the driving was hazardous" (Finding 8, emphasis added).[2] These noncomittal "findings" also do not aid our review—while the video may "seem to show" particular scenarios that "appear" to the trial court to be true, did the trial court find those scenarios to *in fact* be true, acting in its fact-finding role?

Thirdly, while finding that "Deputy Cisneroz's testimony was not corroborated by the video evidence" (Finding 9), the trial court does not specify which parts of his testimony were not "corroborated" by the video. The trial court's mere observation that the video and live testimony conflict does not constitute a factual finding or fulfill the court's fact-finding role. When faced with

---

[1] The trial court made a total of nine factual findings. The first two are background findings, irrelevant to the issues on appeal; Findings Three through Six merely summarize some of Deputy Cisneroz's testimony; Findings Seven and Eight provide the court's findings about the video; and Finding Nine states that "Deputy Cisneroz's testimony was not corroborated by the video evidence." From these "findings," the trial court concluded that there was no "reasonable basis, based on the totality of the circumstances," for the stop.

[2] Deputy Cisneroz testified that appellee maintained "a car length or less than half a car length" from the lead car and was "having to brake behind the car in front of [her] in order to prevent [her car] from getting even closer." He also testified that the vehicles were on the "thoroughfare" of South Lamar, which has "a lot of businesses, a lot of gas stations, convenience stores, [and] where cars are going to be coming in and out."

conflicting evidence, the trial court's duty is to resolve those very conflicts. *See, e.g.*, *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). Yet, the trial court did not make any express findings discrediting Deputy Cisneroz's testimony, even reciting in its factual findings the deputy's testimony that (1) appellee's hesitation when making her left turn "caused a northbound vehicle to aggressively brake and move into another lane to avoid a collision" and (2) appellee's following of the lead car was "extremely dangerous."[3] Without express findings discrediting Deputy Cisneroz's testimony, we would have to imply that the trial court made such findings, which we may not do. *See Mendoza*, 365 S.W.3d at 672–73.

Moreover, with respect to the deputy's testimony about appellee's alleged unsafe left turn, the video could neither have corroborated nor contradicted it: the deputy testified that he watched appellee's car through his side-view mirror once his vehicle passed hers and saw that the oncoming car had to brake "aggressively" and "move into the middle lane in order to avoid [a] collision" and that he heard the "screeching noise" of brakes. The video does not—and logistically could not—depict these alleged events (or their absence), as they allegedly occurred behind the deputy's vehicle and out of the range of the dash-cam (and the video was not audio-enabled). Nonetheless, the trial court "found" that the video "seems to contrarily show" that the oncoming vehicle was "not close enough in proximity to Defendant's vehicle to cause a traffic hazard." The trial court's implied finding that appellee's left turn was not unsafe is unsupported by the record absent an express determination that Deputy Cisneroz's testimony on the issue was not credible.

---

[3] As correctly noted by the State, Deputy Cisneroz did not, in fact, testify that appellee's following distance was "extremely dangerous" but, rather, that her following of the lead car was "extremely close [] for the speed that was being traveled at" and that she was "aggressively following" the lead car.

8

Finally, the trial court made no factual findings about the deputy's testimony relating to why he suspected that appellee was driving while intoxicated, apart from the issue of possible traffic violations.[4] The deputy testified that (1) "in [his] experience, there have been numerous times where [he had] stopped cars doing such things [following another car extremely closely] and come to realize that it was either the person in front or the person in back who thought they may have had a little bit too much to drink"; (2) he was assigned at the relevant time to the DWI unit, having received extra training for DWI detection; (3) he pulled over appellee during the "peak hours" for DWI; and (4) South Lamar is a thoroughfare north and south from the downtown "bar district." Factual findings on this relevant testimony, including any applicable credibility determinations, are essential to the "totality of circumstances" to which the law of reasonable suspicion must be applied. *See Cullen*, 195 S.W.3d at 699 (defining "essential findings" as those adequate to provide appellate court with basis upon which to review trial court's application of law to facts); *see also United States v. Cortez*, 449 U.S. 411, 418 (1981) (noting that "whole picture" assessment must be viewed and weighed "not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement); *Woods*, 956 S.W.2d at 38 (same). If a trial court errs in its determination of which findings are legally dispositive of a motion to suppress, the appellate court must remand the cause for entry of additional, specific findings of fact with respect to the dispositive issue. *Elias*, 339 S.W.3d at 674, 676 (holding that court entering findings of fact and conclusions of law must

---

[4] The trial court did make a "finding" (Finding 4) about the deputy's experience with other drivers following too closely in the context of persons helping one another on the road after having had too much to drink, but the "finding" merely summarizes (inaccurately) the deputy's testimony and so, as already explained, is in effect a non-finding.

9

ensure that findings are "adequate and complete, covering every potentially dispositive issue that might reasonably be said to have arisen in the course of the suppression proceedings."). Rather than considering the totality of the circumstances to determine whether the deputy could have objectively and reasonably suspected that appellee was violating traffic laws or driving while intoxicated, the trial court appeared to consider, piecemeal, whether the video objectively depicted actual traffic violations.

The record simply does not contain sufficient factual findings from which we may conduct our review of the dispostive legal question: whether the deputy had a reasonable suspicion that appellee was engaged in criminal activity. Accordingly, we sustain the State's alternate issue, abate this appeal, and remand this cause for supplemental findings. *See* Tex. R. App. P. 44.4 (stating that appellate court must direct trial court to correct remediable error if such error prevents proper presentation of case to court of appeals).

## CONCLUSION

We abate this appeal and remand the cause to the trial court for supplemental findings consistent with this opinion.

It is ordered November 17, 2016.

Before Justices Puryear, Pemberton, and Field

Abated and Remanded

Filed: November 17, 2016

Do Not Publish

10