**Opinion filed August 25, 2022**



In The

# Eleventh Court of Appeals

_____

## No. 11-20-00266-CR

_____

## MIGUEL ANGEL FIERRO, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 42nd District Court
Taylor County, Texas
Trial Court Cause No. 28390A

### M E M O R A N D U M   O P I N I O N

Miguel Angel Fierro, Jr., Appellant, was arrested after methamphetamine and marihuana were found in his possession during the course of a traffic stop for failure to signal before turning. Appellant moved to suppress any evidence recovered during the stop on the basis that it was obtained in violation of his right against unreasonable searches and seizures. *See* U.S. CONST. amend. IV. The trial court

largely denied Appellant's motion.  Pursuant to a plea agreement, Appellant then pled guilty to knowingly possessing more than four but less than 200 grams of methamphetamine with intent to deliver, a first-degree felony.  TEX. HEALTH & SAFETY CODE ANN. § 481.112(a), (d) (West 2017).  The trial court assessed punishment at confinement for seventeen years in the Institutional Division of the Texas Department of Criminal Justice (TDCJID).

Appellant argues that the trial court abused its discretion when it denied his motion to suppress because the marihuana and methamphetamine were only discovered *after* the detaining officer had unduly prolonged the traffic stop beyond what was reasonably necessary to accomplish the mission of the traffic stop—i.e., issuing a citation or warning for a minor traffic violation.  We modify and affirm.

*Background*

In the early morning of January 5, 2019, Officer Jacob Wooden of the Abilene Police Department observed two vehicles driving closely together.  Based on his training and prior experience, Officer Wooden knew that individuals transporting controlled substances often travel in separate vehicles so that, in the event of a police pursuit, the officers' attention might be diverted away from the vehicle carrying controlled substances and onto the empty "bait car."  Officer Wooden followed the two vehicles until they parted ways, at which point he initiated a traffic stop of Appellant's vehicle for failure to signal before making a left turn.  *See* TEX. TRANSP. CODE ANN. § 545.104(a)–(b) (West 2011).

Appellant was in the driver's seat, accompanied only by his wife, who was in the front passenger seat.  Officer Wooden approached the vehicle on the passenger side, collected their identifications, and then promptly returned to his patrol unit "to do routine computer checks" including previous criminal charges using Texas law enforcement databases.  The search confirmed that neither occupant had any

outstanding arrest warrants. Officer Wooden conveyed this information to his backup officer and further commented to her that neither of the occupants "seem like dopers." However, Officer Wooden recognized Appellant as the suspect in a robbery he had investigated. In the course of his computer search, Officer Wooden also discovered that Appellant had prior offenses— possession of a controlled substance and an assault charge. After this "piqued [his] attention," Officer Wooden said: "He doesn't have any warrants, [but] I'm going to get him out and talk to him [and] see what we can figure out."

As soon as Officer Wooden reapproached Appellant's vehicle, this time on the driver's side, he observed a plastic baggie, which Appellant handed over upon request. Officer Wooden testified at the suppression hearing that, when he approached Appellant's vehicle the second time, he immediately smelled a strong odor of marihuana and that, when Appellant gave him the plastic baggie, he could smell an odor of marihuana on it. Upon smelling the odor of marihuana, Officer Wooden ordered Appellant to exit the vehicle. He advised Appellant that he could smell marihuana and asked Appellant where it was. Appellant denied having any marihuana on his person. Appellant was eventually handcuffed after failing to comply with Officer Wooden's instructions to keep his hands out of his pockets and to throw away his cigarette. Officer Wooden testified that Appellant was not under arrest at this point, but rather was handcuffed as a safety precaution while Officer Wooden continued to investigate his suspicion that Appellant had marihuana in his possession.

During a search of Appellant's person, Officer Wooden discovered a bag of marihuana in Appellant's back pocket. Further search uncovered a bag of methamphetamine in Appellant's underpants and $633 in his wallet. After having

been *Mirandized*[1] by Officer Wooden, Appellant admitted that he had sold some of the methamphetamine in his possession for fifty dollars. An additional fifty-three grams of marihuana were found under Appellant's genitals during an unclothed search at the jail.

A grand jury returned a four-count indictment, charging Appellant with (1) possession of methamphetamine with intent to deliver, a first-degree felony, HEALTH & SAFETY § 481.112(a), (d); (2) possession of methamphetamine, a second-degree felony, *id.* § 481.115(a), (d); (3) tampering with evidence, a third-degree felony, TEX. PENAL CODE ANN. § 37.09(d)(1) (West Supp. 2021); and (4) possession of a controlled substance in a correctional facility, a third-degree felony, *id.* § 38.11(b), (g). Appellant moved to suppress the State's use of any evidence uncovered during the traffic stop. The trial court largely denied Appellant's motion but did order that any statements Appellant made *after* Officer Wooden discovered the marihuana, but *before* he was *Mirandized*, be excluded. Appellant pled guilty to Count One—possession with intent to deliver—in exchange for the State dropping Counts Two, Three, and Four and recommending a sentence of confinement for seventeen years in the TDCJID. The trial court accepted Appellant's plea and the State's recommended punishment. This appeal followed.

*Discussion*

In his first issue, Appellant argues that we must abate this appeal until the trial court issues findings of fact and conclusions of law with respect to its partial grant and partial denial of Appellant's motion to suppress. However, the trial court has

---

[1] "[W]hen an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning," he "must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda v. Arizona*, 384 U.S. 436, 478–79 (1966).

since issued the requested findings of fact and conclusions of law. As such, Appellant's first issue is moot. *See, e.g., Clemmons v. State*, No. 01-95-00525-CR, 1996 WL 111847, at \*1 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd) (holding that abatement issue was moot where trial court supplemented the record with findings of fact and conclusions of law with respect to denial of motion to suppress a confession). Accordingly, the sole remaining issue before us is whether the trial court erred in denying, in relevant part, Appellant's motion to suppress.

I. *Denial of Motion to Suppress Was Justified—Traffic Stop Was Not Unduly Delayed Under the Fourth Amendment*

A. *Standard of Review*

In reviewing a ruling on a motion to suppress, we apply a bifurcated standard of review. *Brodnex v. State*, 485 S.W.3d 432, 436 (Tex. Crim. App. 2016); *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We give almost total deference to the trial court's determination of the historical facts that the record supports, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Derichsweiler v. State*, 348 S.W.3d 906, 913 (Tex. Crim. App. 2011); *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We also defer to the trial court's findings as to questions of fact and mixed questions of law and fact that turn on the weight or credibility of the evidence. *Brodnex*, 485 S.W.3d at 436; *Wade v. State*, 422 S.W.3d 661, 666–67 (Tex. Crim. App. 2013); *Derichsweiler*, 348 S.W.3d at 913.

We review de novo the trial court's determination of pure questions of law, the application of the law to established facts, and the legal significance of those facts. *Lerma v. State*, 543 S.W.3d 184, 190 (Tex. Crim. App. 2018); *Wade*, 422 S.W.3d at 667; *Derichsweiler*, 348 S.W.3d at 913; *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) (citing *United States v. Sharpe*, 470 U.S. 675, 682 (1985)).

5

We also review de novo mixed questions of law and fact that are not dependent upon credibility determinations. *Brodnex*, 485 S.W.3d at 436; *Derichsweiler*, 348 S.W.3d at 913 (citing *Amador*, 221 S.W.3d at 673). Whether the facts known to the officer rise to the level of reasonable suspicion is a mixed question of law and fact that we review de novo. *State v. Mendoza*, 365 S.W.3d 666, 669–70 (Tex. Crim. App. 2012) (citing *Ornelas v. United States*, 517 U.S. 690, 696, 699 (1996)).

When, as in this case, the trial court makes explicit findings of fact, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). In that context, we review a trial court's ruling on a motion to suppress in the light most favorable to the trial court's decision, regardless of whether the trial court granted or denied the motion. *Wade*, 422 S.W.3d at 666 (citing *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011)); *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). As such, we will sustain the trial court's ruling if it is supported by the record and if it is correct under any applicable legal theory. *Lerma*, 543 S.W.3d at 190.

B. *Applicable Law*

The Fourth Amendment to the United States Constitution guarantees protection against unreasonable searches and seizures. U.S. CONST. amend. IV; *Hubert v. State*, 312 S.W.3d 554, 560 (Tex. Crim. App. 2010). These constitutional protections extend to investigatory stops of persons or vehicles that fall short of a traditional arrest. *Ramirez-Tamayo v. State*, 537 S.W.3d 29, 36 (Tex. Crim. App. 2017) (citing *United States v. Arvizu*, 534 U.S. 266, 273 (2002)). Warrantless traffic stops by law enforcement personnel to address traffic violations constitute seizures within the meaning of the Fourth Amendment and are tantamount to temporary detentions; therefore, such traffic stops must be justified and supported by

6

reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 7 (1989); *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984); *see Derichsweiler*, 348 S.W.3d at 914 (citing *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005)).

Reasonable suspicion for a detention exists when a law enforcement officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead the officer to reasonably suspect that the detained person has engaged in, is presently engaging in, or soon will engage in criminal activity. *Derichsweiler*, 348 S.W.3d at 914; *see also Wade*, 422 S.W.3d at 668; *Garcia v. State*, 43 S.W.3d 527, 530 (Tex. Crim. App. 2001). This is an objective standard that disregards the actual subjective intent of the officer and focuses, instead, on whether there was an objectively justifiable basis for the detention. *Derichsweiler*, 348 S.W.3d at 914; *see State v. Clark*, 315 S.W.3d 561, 564 (Tex. App.—Eastland 2010, no pet.).

An actual traffic violation constitutes an objectively reasonable basis for the stop and sufficiently justifies the initial detention. *Walter v. State*, 28 S.W.3d 538, 543 (Tex. Crim. App. 2000). Further, a seizure for a traffic violation justifies a police investigation of that violation. *Rodriguez v. United States*, 575 U.S. 348, 354 (2015). The seizure's mission is to address the traffic violation that warranted the stop. *Id.* This "includes 'ordinary inquiries incident to [the traffic] stop.'" *Id.* at 355 (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005)) (alteration in original). As ordinary inquiries, the officer may request certain information—a driver's license, vehicle registration, and proof of insurance—from the driver, run a computer check on that information, and determine whether any outstanding warrants exist against the driver. *Id.*; *Lerma*, 543 S.W.3d at 190. "These checks serve the same objective as enforcement of the traffic code: ensuring that vehicles on the road are operated safely and responsibly." *Rodriguez*, 575 U.S. at 355. The officer may also inquire about

matters unrelated to the mission of the stop,[2] so long as that inquiry does not prolong the detention beyond the time reasonably required to complete the mission of the stop. *Lerma*, 543 S.W.3d at 190; *see also Rodriguez*, 575 U.S. at 350–51. A stop that exceeds the time necessary "to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez*, 575 U.S. at 350.

When "the computer check is completed, and the officer knows that the driver has a current valid license, no outstanding warrants, and the car is not stolen," the mission of the traffic-stop investigation is complete. *Lerma*, 543 S.W.3d at 191. If the officer "can complete these traffic-based inquiries expeditiously, then that is the amount of 'time reasonably required to complete'" the mission of the stop: "a traffic stop 'prolonged beyond' that point is 'unlawful.'" *Rodriguez*, 575 U.S. at 357 (quoting *Caballes*, 543 U.S. at 407). Therefore, once these official tasks of a traffic stop have ended, the officer may not embark on inquiries unrelated to the purpose of the stop unless the "officer develops reasonable suspicion that the driver or an occupant of the vehicle is involved in criminal activity." *Lerma*, 543 S.W.3d at 191.

C. *Analysis*

Here, the traffic stop was justified at its inception. Officer Wooden observed Appellant commit a traffic violation—namely, failing to signal before making a turn. *See* TRANSP. § 545.104(a)–(b). The traffic stop was justified because Officer Wooden observed a traffic violation. Whether the traffic stop was pretextual is of no consequence. *See Whren v. United States*, 517 U.S. 806, 813 (1996) (foreclosing arguments that the reasonableness of a traffic stop depends on the actual motivations

---

[2]Other such permissible matters include, but are not limited to, requesting the driver or passengers to exit the vehicle to observe them physically and asking when they were last arrested or when they last "smoked weed." *See Lerma*, 543 S.W.3d at 187–88.

8

of the individual officers involved). Appellant argues, however, that once Officer Wooden verified that Appellant and his passenger had no outstanding warrants and that the vehicle was neither stolen nor uninsured, there was nothing left to do but return their IDs and issue a citation or a warning for the traffic violation. Thus, Appellant argues, Officer Wooden prolonged the stop beyond the time reasonably required to complete the mission of issuing a ticket or a warning for the traffic violation when he returned to Appellant's vehicle to "see what [he could] figure out." *See Rodriguez*, 575 U.S. at 350 ("A seizure justified only by a police-observed traffic violation . . . 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' of issuing a ticket for the violation." (quoting *Caballes*, 543 U.S. at 407) (alterations in original)).

The State responds that Officer Wooden's subjective intent is irrelevant and that, therefore, the stop was not unduly prolonged inasmuch as even an objectively reasonable traffic stop remains incomplete until the detaining officer returns the detainees' IDs and issues a citation or warning for the traffic violation. It makes no difference, in other words, what Officer Wooden's motives were for returning to the vehicle. Any officer in Officer Wooden's position would have had to return to the vehicle before the traffic stop could be completed, and Officer Wooden testified that, when he returned to the vehicle, he immediately smelled marihuana and saw Appellant putting a plastic baggie into his pocket. The State argues (1) that the trial court was entitled to believe Officer Wooden's testimony that he smelled marihuana immediately upon returning to the vehicle and (2) that "the smell of marijuana justifie[d] Appellant's further detention." We agree.

When the reason for a traffic stop—in this case the investigation of a traffic violation made in the officer's presence—has been satisfied, "the stop must end and may not be used as a 'fishing expedition for unrelated criminal activity.'" *Fisher v.*

9

*State*, 481 S.W.3d 403, 408 (Tex. App.—Texarkana 2015, pet. ref'd) (quoting *Evanoff v. State*, No. 11-09-00317-CR, 2011 WL 1431520, at *5 (Tex. App.—Eastland Apr. 14, 2011, pet. ref'd) (mem. op., not designated for publication)). Thus, Officer Wooden's authority to detain Appellant for the traffic violation ceased when Officer Wooden's "tasks tied to the traffic infraction [we]re—or reasonably should have been—completed." *Rodriguez*, 575 U.S. at 354.

On the record before us, it does appear that Officer Wooden returned to Appellant's vehicle for the purpose of engaging in a "fishing expedition." After his computer check ruled out any other reasons to detain Appellant—aside from the initial traffic violation—Officer Wooden returned to Appellant's vehicle to "see what [he could] figure out." There was, by that point, nothing to "figure out"—at least nothing related to the traffic violation that justified the traffic stop or the incidental objective of "ensuring that vehicles on the road are operated safely and responsibly." *See id.* at 355. Nevertheless, we are not convinced that Officer Wooden had unduly prolonged the traffic stop by the time he discovered the marihuana and methamphetamine in Appellant's possession.

Without deciding how much time it should have taken to diligently complete the mission of this traffic stop,[3] we conclude that Officer Wooden did not exceed that amount of time before he "develop[ed] reasonable suspicion that [Appellant] [wa]s involved in criminal activity" that justified further investigation unrelated to the original mission of the traffic stop. *See Lerma*, 543 S.W.3d at 191. The original mission of the stop was not complete until Officer Wooden returned Appellant's ID and issued a citation or warning. *See id.* at 194 (holding traffic stop not unduly prolonged where officer "had not yet completed all aspects of the traffic stop at the

---

[3]*See, e.g.*, *United States v. Brigham*, 382 F.3d 500, 511 (5th Cir. 2004) ("There is . . . no constitutional stopwatch on traffic stops.").

point that Appellant fled"); *Fisher*, 481 S.W.3d at 403 (holding traffic stop not unduly prolonged where officer had not yet issued citation or warning, rendering mission of stop incomplete). To *complete* the mission of the traffic stop, then, Officer Wooden would have had to return to Appellant's vehicle and carry out these final steps.

Officer Wooden *did* return to Appellant's vehicle, albeit for the purpose of conducting further investigation. *See Rodriguez*, 575 U.S. at 356. Nevertheless, Officer Wooden testified that, upon returning to Appellant's vehicle, he *immediately* smelled marihuana and observed Appellant stuffing a plastic baggie into his pocket. The trial court found this testimony to be credible, and we afford the utmost deference to a trial court's credibility determinations at a suppression hearing. *Derichsweiler*, 348 S.W.3d at 913. Thus, without using more time than it would have taken a diligent officer to complete the mission of this traffic stop—by returning Appellant's ID and issuing a citation or warning—Officer Wooden discovered specific, articulable facts to reasonably suspect that Appellant possessed marihuana. *See* HEALTH & SAFETY § 481.121 (making it an offense to "knowingly or intentionally possess[] a usable quantity of marihuana"). The odor of marihuana thus expanded the scope of the original detention. *See Glazner v. State*, 175 S.W.3d 262, 266 (Tex. Crim. App. 2005). Thus, Officer Wooden was entitled to expand the scope of his investigation beyond the original mission of the traffic stop in order to diligently confirm or dispel his reasonable suspicion that Appellant possessed marihuana. He found the bag of marihuana a mere three minutes later.

For the reasons articulated above, we conclude that Officer Wooden had not unduly prolonged the traffic stop by the time he developed reasonable suspicion of criminal activity unrelated to the traffic violation. His reasonable suspicion that Appellant possessed marihuana justified further detention and investigation

unconstrained by the original mission of the traffic stop. It was during this investigation that Officer Wooden found the marihuana and methamphetamine in Appellant's possession. In short, the marihuana and methamphetamine were not found in the course of an unduly prolonged traffic stop. Accordingly, the trial court did not abuse its discretion in denying Appellant's motion to suppress; therefore, we overrule his second issue on appeal.

*This Court's Ruling*

The original judgment of conviction contained three clerical errors. First, the judgment reflected that the offense was committed in 2009 rather than 2019. Second, it reflected that the punishment was assessed at confinement for seven years in the TDCJID, rather than seventeen. And third, it included an erroneous special finding, which a thorough examination of the record confirms has no basis in fact. There is no evidence that Appellant "used or exhibited a deadly weapon, namely, [a] HAMMER, during the commission of a felony offense or during immediate flight therefrom or was a party to the offense and knew that a deadly weapon would be used or exhibited."[4]

A nunc pro tunc judgment was filed that corrected the length of the sentence, but it did not remove the special finding or correct the erroneous offense date. We have the authority to modify the trial court's judgment to correct clerical errors. *See* TEX. R. APP. P. 43.2(b) (granting appellate courts the power to "modify the trial court's judgments and affirm it as modified"); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (holding that appellate courts have the power to reform judgments to correct clerical errors). Accordingly, we modify the trial

___

[4]Such information having no relationship to this case, we can only conclude that this may be an erroneous holdover from a judgment in a different case.

court's judgment nunc pro tunc to reflect "**1/5/2019**" as the "**Date of Offense**" and to delete the special finding.

As modified, we affirm the trial court's judgment nunc pro tunc.


W. BRUCE WILLIAMS

JUSTICE


August 25, 2022

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.